IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Firehouse Restaurant Group, Inc., a Florida ) <br> corporation, Three Alarm Subs, Inc., a ) <br> South Carolina corporation, and Fireside ) <br> Restaurant Company, Inc., a South Carolina ) <br> corporation, ) <br> ) <br>             Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Scurmont LLC, d/b/a Calli Baker's ) <br> Firehouse Bar & Grill, and Heath ) <br> Scurfield, an individual, ) <br> ) <br>             Defendants. ) <br> _____) | C/A No. 4:09-cv-00618-RBH <br><br><br><br><br><br><br><br>**ORDER** |

This is a trademark dispute between competing restaurants. The following motions are pending before the Court: (1) Plaintiffs' ("Firehouse") Motion in Limine [Docket #166]; (2) Defendants' ("Calli Baker's") Motion in Limine [Docket #167]; and (3) Calli Baker's Motion in Limine to Exclude Evidence of Donations and For Other Relief [Docket #193]. The Court held a hearing on these motions on August 9, 2011. At the hearing, the Court ruled from the bench on the following issues:

*-Evidence Regarding Calli Baker's Financial Condition.* Both parties agree that Calli Baker's shall not introduce evidence relating to Calli Baker's financial condition, loans, or legal fees, as these issues are irrelevant in light of the fact that neither party is seeking damages on the remaining claims. However, Calli Baker's may present evidence of its volume of sales, as this evidence is relevant to the issue of whether the evidence of actual confusion in this case is *de minimus*; and

*-Audio/Video Recording of Calli Baker's taken by Heath Scurfield.* The video recording of Calli Baker's taken by Heath Scurfield is relevant to the similarity of facilities factor of the likelihood of confusion test. Both parties agreed, without objection, to the admission of the video without the audio. At trial, Heath Scurfield may testify as to what is depicted on the video.

1

The Court took the following issues under advisement:

I.  Firehouse's motion in limine to exclude Internet printouts of alleged third party use;

II. Firehouse's motion in limine to exclude testimony by Heath Scurfield and other lay witnesses as to the legal significance of the term "firehouse";

III. Firehouse's motion to preclude Dr. Bearden from testifying that he was contacted by Firehouse about the possibility of serving as an expert witness;

IV. Firehouse's motion in limine to exclude written communications between Robin Sorensen and third parties;

V.  Calli Baker's motion in limine to exclude Three Alarm Subs, Inc.'s evidence of actual confusion; and

VI. Calli Baker's motion in limine to exclude evidence of donations.

In addition to presenting arguments at the motions hearing, both parties have filed briefs addressing these issues.

## **I:**     **Internet Printouts of Alleged Third Party Use**

Firehouse seeks to preclude Calli Baker's from introducing a substantial number of printouts from various Internet websites purporting to identify businesses that use the term "firehouse" in their names. These documents are from various websites, including restaurant websites, search engines, and government websites from which one can search for registrations or corporate records. The trial exhibits at issue are Defendants' Trial Exhibits #5 and #104. The parties have represented to the Court that these exhibits are comprised of both (1) documents printed from the Internet by Heath Scurfield **prior to** the close of discovery; and (2) Internet printouts and business listings produced **after** discovery and attached to the affidavit of either Heath Scurfield or one of his attorneys, Ammon Lesher. Firehouse objects to a substantial number of these printouts on the basis that they were not timely produced during discovery. Further, it appears that Firehouse objects to **all** of the printouts on the following grounds: they (a) have

not and cannot be authenticated; (b) constitute inadmissible hearsay; and (c) are not relevant and/or are unfairly prejudicial/likely to mislead the jury.

### I.A:     Late Disclosures of Internet Printouts

Firehouse argues that it submitted Requests for Production of documents to Calli Baker's and that the documents referenced on the "Timeline of Undisclosed Materials" ("Timeline"), which was submitted at the motions hearing, were submitted after the close of discovery. Calli Baker's does not appear to dispute this assertion, but argues that it had no duty to disclose any document from the Internet until it actually printed the document. The Court disagrees, as this would defeat the purpose of discovery. However, to the extent that there is no prejudice to Firehouse as explained below, such documents are not excluded as untimely.

Under Rule 37(c)(1),

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; . . . and (C) may impose other appropriate sanctions . . . .

Fed. R. Civ. P. 37(c)(1). "[T]he basic purpose of Rule 37(c)(1) [is] preventing surprise and prejudice to the opposing party." *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.,* 318 F.3d 592, 596 (4th Cir. 2003). Thus, the district court has broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless. *Id.* at 597. "[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the

surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* (The first four factors "relate mainly to the harmlessness exception, while the remaining factor . . . relates primarily to the substantial justification exception.")

The parties agree that approximately 290 of the printouts from Defendants' Trial Exhibit #5 were timely disclosed and present no surprise or prejudice to Firehouse. Additionally, Calli Baker's argues that it put Firehouse on notice of approximately 78 URLs of businesses allegedly using the term "firehouse" through its Requests to Admit in or around August 2009 **and** disclosed between 138 to 150 restaurants allegedly using the term "firehouse" in response to Firehouse's interrogatories in or around November 2009. To the extent that any of these timely disclosures (i.e. the 78 URLs and approximately 150 restaurants) are represented in the remaining printouts comprising Defendants' Trial Exhibits #5 and #104, they present no surprise or prejudice under Rule 37(c)(1) because they were disclosed prior to the close of discovery.

Similarly, with regard to the printouts accompanying "Lesher Aff. (Ex. N)"[1] and Calli Baker's "Exhibits Y - BBB"[2] referenced on the Timeline, there appears to be no prejudice to Firehouse pursuant to Rule 37(c)(1). "Lesher Aff. (Ex. N)" contains 23 pages of websites, and "Exhibits Y- BBB" contain 30 third party registrations. These printouts were disclosed to Firehouse in December 2010, which was only one month after the close of discovery. Additionally, counsel for Calli Baker's represented to the Court that she notified opposing counsel prior to the close of discovery that Calli Baker's would be relying on various registrations with the USPTO as evidence in this case. Firehouse did not dispute this

---

[1] *See* Docket # 102.

[2] *See* Docket #s 91 through 100.

assertion at the hearing. Based on the limited number of printouts in these exhibits and the fact that these printouts were disclosed only one month after discovery closed back in 2010, the Court finds that Calli Baker's failure to disclose, if any, was harmless under Rule 37(c)(1). To the extent there was any surprise, Firehouse has had ample opportunity to cure said surprise, allowing these printouts would not disrupt the trial, the printouts are important to the issue of third party use, and, based on the limited number of printouts and the fact that they were disclosed long ago, there is no prejudice to Firehouse. Thus, if any of these printouts are included in the printouts comprising Defendants' Trial Exhibits #5 and #104, they present no surprise or prejudice and are not excluded as untimely.

With regard to the 6 trademark applications contained in the "Supp. Lesher Aff. (Ex. GGG)"[3], counsel for Calli Baker's represented to the Court that some of these applications were not even in existence prior to the close of discovery. Therefore, the late disclosure of these printouts may be "substantially justified" pursuant to Rule 37(c)(1), and the Court will address these printouts on a case-by-case basis at trial as it comes up.

The remaining printouts referenced as "Scurfield Aff. (Ex. EEE)"[4] and "Scurfield Supp. Aff. (Ex. FFF)"[5] on the Timeline are excluded as untimely and prejudicial to Firehouse. Calli Baker's has failed to show that these late disclosures were harmless or substantially justified under Rule 37(c)(1). Again, the Court has considered all the factors under Rule 37(c)(1). Particularly, with regard to the surprise and ability to cure the surprise factors, counsel for Firehouse represented that he has already deposed Heath Scurfield and did not have these printouts available for the deposition; there is no opportunity at this late

---

[3] *See* Docket # 147.

[4] *Id.*

[5] *Id.*

date to re-depose him. With regard to the importance of the evidence factor, counsel for Calli Baker's indicated that some of the Internet printouts may be additional pages of websites already disclosed and, therefore, would be cumulative. With regard to the "170+ pages" of "Corporate records search" in "Scurfield Supp. Aff. (Ex. FFF)," these printouts were not timely disclosed, and Calli Baker's has provided insufficient explanation for failing to disclose this information to Firehouse until 4 months after the close of discovery. Thus, to the extent the printouts contained in "Scurfield Aff. (Ex. EEE)" and "Scurfield Supp. Aff. (Ex. FFF)" are included in the printouts comprising Defendants' Trial Exhibits #5 and #104, they are excluded pursuant to Rule 37(c)(1).

### I.B:   Authentication

As to the printouts that survive Rule 37(c)(1) scrutiny, Firehouse also objects to these documents on the basis that they have not and cannot be authenticated. Resolution of whether evidence is authentic is governed by Federal Rule of Evidence 104(b). *United States v. Branch,* 970 F.2d 1368, 1370 (4th Cir. 1992). First, "the district court must determine whether its proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Id.* (citations omitted). Then, "because authentication is essentially a question of conditional relevancy, the jury ultimately resolves whether evidence admitted for its consideration is that which the proponent claims." *Id.* at 1370-71. "A party seeking to admit an exhibit need only make a prima facie showing that it is what he or she claims it to be. This is not a particularly high barrier to overcome." *Lorraine v. Markel Am. Ins. Co.,* 241 F.R.D. 534, 542 (D. Md. 2007) (internal citation omitted). "[T]he question for the court under Rule 901 is whether the proponent of the evidence has offered a foundation from which the jury could reasonably find that the evidence is what the proponent says it is . . . . The Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the

*jury* ultimately might do so." *Id.* (citing *United States v. Safavian,* 435 F. Supp. 2d 36, 38 (D.D.C. 2006)) (internal quotations omitted). Records from government websites are generally considered admissible and self-authenticating. *See Williams v. Long,* 585 F. Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating that postings on government websites are inherently authentic or self-authenticating). To authenticate exhibits containing information from other Internet websites, there are several methods of authentication that can be used; however, "[t]he authentication rules most likely to apply, singly or in combination, are 901(b)(1) (witness with personal knowledge), 901(b)(3) (expert testimony), 901(b)(4) (distinctive characteristics), 901(b)(7) (public records), 901(b)(9) (system or process capable of producing reliable result), and 902(5) (official publications)." *Lorraine,* 241 F.R.D. at 556.

In this case, Calli Baker's has represented that most of its printouts have dates and web addresses on them, and cites to *Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 213 F. Supp. 2d 1146 (C.D. Cal. 2002) for the proposition that courts may consider "circumstantial indicia of authenticity" such as the presence of the date and identifying web address for purposes of authentication. Calli Baker's argues that most of the printouts at issue contain these distinctive characteristics, and these circumstantial cues are sufficient to make a prima facie showing of authenticity.

Additional support for this argument can be found in *United States v. Standring,* No. 1:04CV730, 2006 WL 689116 (S.D. Ohio 2006). Both cases appear to hold that a witness declaration, when viewed in combination with the documents' circumstantial indicia of authenticity (i.e., the date and web address that appear on them), would support a reasonable juror in the belief that the documents are what the declarant says they are. This Court agrees and believes that Calli Baker's has made a <u>prima facie</u>

7

showing as to the authenticity of the printouts that contain these distinctive characteristics. However, as noted in *Branch* and *Lorraine,*

> [a]n in camera hearing addressing authenticity does not replace the presentation of authenticating evidence before the jury; the district court must revisit the issue at trial. Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that [the evidence] was authentic, evidence that would support the same ruling must be presented again, to the jury, before the [evidence] may be admitted.

*Lorraine,* 241 F.R.D. at 540 (quoting *Branch,* 970 F.2d at 1371). While Calli Baker's foundational evidence is sufficient for a prima facie showing, it is unclear to the Court as to whether some printouts will ultimately be admissible since it is unclear which declarant/witness will be used with regards to proving authentication in front of the jury. The Court notes that on the Timeline, the third party printouts referenced as "Lesher Aff. (Ex. N)", "(Exhibits Y - BBB)", and "(Supp. Lesher Aff. (Ex. GGG))," presumably involve Mr. Lesher as the declarant. However, Mr. Lesher is an attorney of record in this case for Calli Baker's and cannot testify as a witness.

Thus, to the extent that any of the printouts contain a date and web address, Calli Baker's has made a prima facie showing of authenticity pursuant to Rule 104(b); however, this ruling is without prejudice to Firehouse's right to raise any appropriate objection regarding whether the proper foundation for authentication has been presented before the jury by a proper declarant/witness.

### I.C:     Hearsay

Firehouse has also moved to exclude the printouts as inadmissible hearsay. "Hearsay," which "is a statement, other than one made by the declarant while testifying at trial or hearing, offered to prove the truth of the matter asserted," is generally not admissible. Fed. R. Evid. 801(c) & 802. In the instant matter, most of the Internet printouts simply depict a logo or the use of the word "firehouse" in a business

8

name; as such, these are not "statements" and therefore not hearsay. Even those printouts that do contain "statements" do not appear to be hearsay because they are not offered for the truth of the matter asserted, but rather to show what a consumer would find when searching the Internet. *See Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.,* 205 F.3d 137, 141 (4th Cir. 2000) ("[T]o the extent that Raleigh Ale House relied on the fact that 'ale house' was used or 'listed' in public advertising and other media [including an internet search revealing over 100 facilities denominated as "ale houses"], the evidence was not presented for its truth but for the fact that it was so listed."). Thus, the Court denies Firehouse's motion in limine to exclude the printouts on this ground. However, the parties are instructed to consult and be prepared to redact any other statements in the printouts that might pose other evidentiary hearsay, relevancy, or Rule 403 concerns (e.g., a statement in a printout that a certain business was established on a certain date).

### I.D:     Relevance/Prejudice

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. At the motions hearing, Firehouse cited *Petro Stopping Centers, L.P. v. James River Petroleum, Inc.,* 130 F.3d 88 (4th Cir. 1997) to support its argument that Calli Baker's must show "actual use" of the other marks incorporating the term "firehouse" in order for the printouts of the other marks to be relevant to the strength of a mark. However, in *Petro Stopping,* Petro Stopping made the same argument, and the Fourth Circuit disagreed:

> Petro Stopping argues . . . that evidence of third-party registrations alone is insufficient to conclude that a mark is weak. The company maintains that only proof that third parties **actually use the term PETRO would be relevant. We disagree.** The frequency with which a term is used in other trademark registrations is indeed relevant to the distinctiveness inquiry under the first likelihood of confusion factor.

*Petro Stopping,* 130 F.3d at 93 (emphasis added); *see also id.* at 94 ("weakness of mark demonstrated by fact that over seventy trademark registrations, pending applications for registration or renewal, or publications-for-opposition included the term used in plaintiff's mark" (citing *Estee Lauder Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1511 (2d Cir. 1997))). Similarly, in *CareFirst of Md., Inc. v. First Care, P.C.,* 434 F.3d 263 (4th Cir. 2006), the Fourth Circuit stated: "'[T]he frequency of prior use of [a mark's text] in other marks, particularly in the same field of merchandise or service,' illustrates the mark's lack of conceptual strength." *Id.* at 270 (quoting *Pizzeria Uno,* 747 F.2d at 1530-31). "A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties." *Id.* (concluding that CareFirst's mark, used in connection with HMO health care organization, was weak, in part, because "First Care has submitted dozens of web page printouts from health-care-related businesses named CareFirst or FirstCare, as well as an investigator's report confirming that many businesses with these names are currently active").

Thus, with respect to the printouts of third party registrations or applications, these printouts are relevant regardless of whether Calli Baker's presents evidence of actual use. *See Petro Stopping,* 130 F.3d at 93. However, with respect to the other Internet printouts, Calli Baker's must present some evidence of actual use relating to that business for the printout to be relevant to the issue of strength of the mark. The following additional Internet printouts intended as evidence of third party use are excluded on the basis of relevance, lack of authentication, hearsay, or Rule 403: (1) third party's compilations of businesses using the term "firehouse," such as dining guides, menu guides, and restaurant lists; (2) those printouts that depict Firehouse's own licensees; (3) those printouts that depict third party use in another country; (4) duplicate copies; and (5) Heath Scurfield's handwritten notes of

10

third party websites. To the extent that there are other types of printouts that present evidentiary concerns, the Court will deal with them as they are offered.

<u>For purposes of efficiency, the lawyers shall confer and distinguish which of the Internet printouts fall within the admissibility parameters of this Order and be ready to identify them for the record prior to the beginning of the trial.</u>

**II:** **Testimony by Heath Scurfield as to the Legal Significance of the Term "firehouse"**

Firehouse requests that the Court preclude Heath Scurfield and other lay witnesses from testifying as to the following opinions:

(1) that the term "firehouse" is generic and in the public domain;

(2) that firefighters, public safety workers, and other members of the public should be free to use the term "firehouse"; and

(3) that no single person or entity can have a monopoly on the word "firehouse" and any or all uses of that term.

Firehouse argues that these statements are not relevant, lack any evidentiary or legal foundation, and will confuse and mislead the jury. Firehouse also argues that allowing such statements would be extremely prejudicial and would most likely prompt the jury to ignore the actual law. Counsel for Calli Baker's represented to the Court that she did not intend to elicit that type of testimony from Heath Scurfield, but argues that he should be able to generally tell the jury why he believes that he is not infringing, why he thinks he should be able to use the term "firehouse" in the name of his restaurant, why he is fighting this lawsuit, and why he has refused to change the name of his restaurant. The parties agree that Heath

11

Scurfield shall refrain from offering the opinions referenced by Firehouse above because they are legal conclusions and/or likely to confuse and mislead the jury as to the actual law governing trademarks.[6]

### III:    The Fact that Dr. Bearden was Contacted by Firehouse

Firehouse requests that the Court preclude Dr. Bearden from providing rebuttal opinions because he did not prepare a rebuttal report as required by Rule 26(a). Firehouse also requests that the Court preclude Dr. Bearden from testifying that he was contacted by Firehouse about the possibility of serving as an expert witness for it. Specifically, Firehouse argues that any testimony by Dr. Bearden about prior contacts with counsel for Firehouse is irrelevant and prejudicial, and should be excluded. Calli Baker's agrees with Firehouse as to the issue of rebuttal testimony and represented to the Court that it does not intend to elicit rebuttal testimony from Dr. Bearden. However, Calli Baker's argues that since Firehouse intends to attack Dr. Bearden's lack of "real world" experience, Dr. Bearden should be allowed to testify to the fact that counsel for Firehouse contacted Dr. Bearden about the possibility of serving as an expert in this case, but was unable to retain Dr. Bearden because he had already been retained in this case by Calli Baker's.

The Court notes that, consistent with its prior Order [Docket #164], Dr. Sealey will not be permitted to "attack" Dr. Bearden's qualifications. However, "Dr. Sealey may opine as to why he believes that Dr. Bearden's conclusions are unreliable, even if the basis for his opinion is that Dr. Bearden's lack of practical experience in the discipline of marketing led Dr. Bearden to an erroneous

---

[6]For example, Heath Scurfield's opinion that the term "firehouse" is "generic" is problematic because the word "generic" has a specific legal meaning with regards to strength of a mark in trademark law and is not the proper subject matter for lay testimony. *See, e.g., George & Co., LLC v. Imagination Entm't Ltd.,* 575 F.3d 383, 393-94 (4th Cir. 2009) (A mark's conceptual strength is determined, in part, by its placement into one of four categories of distinctiveness: (1) arbitrary or fanciful; (2) suggestive; (3) descriptive; or (4) generic.)

conclusion. Dr. Sealey's expert report rebuts the substance and reliability of Dr. Bearden's expert opinions." *Id.* at 19.  At the motions hearing, counsel for Firehouse represented to the Court that Dr. Bearden was on a list of prospective expert witnesses.  Upon contact, Dr. Bearden advised counsel for Firehouse that he had already been contacted and retained by counsel for Calli Baker's with regard to the instant matter, and that was the end of communications between Firehouse and Dr. Bearden.  These communications between Firehouse and Dr. Bearden are not relevant to this case and could unfairly prejudice the jury as to the proper weight to be given Dr. Bearden's testimony.  Thus, the Court excludes this evidence based on lack of relevancy or, alternatively, Rule 403.

**IV:     Written Communications between Robin Sorensen and Third Parties**

Firehouse seeks to exclude: (1) a September 16, 2002, email frm Dillip Kanji to Robin Sorensen; (2) an October 15, 2002, letter from Dillip Kanji to Robin Sorensen; and (3) a March 3, 2004, email from Tom Seaton to Robin Sorensen.  Firehouse argues that these letters are being offered for the truth of the matters asserted therein and constitute inadmissable hearsay.  In response, Calli Baker's argues that these letters are not offered for the truth of the matter asserted therein, but rather to show the knowledge and intent of Robin Sorensen, which goes directly to Calli Baker's Trademark Cancellation due to Fraud cause of action.

Firehouse claims that Mr. Sorensen did not intend to defraud the USPTO when he applied for Registration Number 3,173,030 (the "Firehouse word mark") in March 2003.  Calli Baker's intends to offer the communications between Robin Sorensen and third parties to show what information Mr. Sorensen was provided about the presence of a senior user of the Firehouse word mark in the Tampa area and, therefore, his knowledge and intent when he filed the application for registration of the Firehouse word mark just a few months later.  Since the communications are not being offered to prove the truth

of the matter asserted, they do not constitute inadmissible hearsay. *See United States v. Safari,* 849 F.2d 891, 894 (4th Cir. 1988) (holding a statement is not hearsay if it is offered to prove knowledge, or show the effect on the listener or listener's state of mind); *see also United States v. Robinson,* 33 F.3d 53, *3 (4th Cir. 1994) (table) ("Because the letter was offered to prove [Defendant's] knowledge of the conspiracy, not the truth of any assertions contained in the letter, it was not hearsay."); *Stewart v. Warden of Lieber Corr. Inst.,* 701 F. Supp. 2d 785, 796 n.4 (D.S.C. 2010). The Court denies Firehouse's motion in limine as to this issue, as these communications do not constitute inadmissible hearsay.

**V:     Three Alarm Subs, Inc.'s Evidence of Actual Confusion**

Calli Baker's requests that the Court exclude the testimony of three (3) individuals concerning the issue of actual confusion: Mary Paquin, B.J. Paquin, and Laura Whitesides. Calli Baker's argues that Bryan Paquin, Sr., was the 30(b)(6) designee on the issue of actual confusion at Three Alarm Subs and that these other three witnesses subsequently gave inconsistent testimony. Additionally, Calli Baker's argues that the testimony of Laura Whitesides should be excluded on the additional ground that she was not identified as a potential witness in this case until Firehouse filed its motion for summary judgment in February 2011, approximately 3 months after the close of discovery.

With regard to Mary Paquin and B.J. Paquin, the Court denies Calli Baker's motion in limine, as they were timely disclosed and, to the extent their declarations are inconsistent with the 30(b)(6) testimony provided by Bryan Paquin, Sr., they are inconsequential with regard to the number of calls per week received: Bryan Paquin, Sr., the 30(b)(6) designee, testified to 3-4 calls per week; Mary Paquin testified to 2-3 calls per week; and B.J. Paquin testified to 4-5 calls per week. As such, Mary Paquin testified to a lesser number of calls per week, which favors Calli Baker's, and B.J. Paquin testified to only one additional call per week. Neither Mary Paquin's nor B.J. Paquin's declaration mentions a

14

period of time over which these calls persisted, but in the 30(b)(6) deposition, Bryan Paquin, Sr. testified "6 to 7 months and those calls had subsided." Because the testimony of Mary Paquin and B.J. Paquin as to the number of calls per week is not necessarily inconsistent, they may testify on the subject. Further, it appears that the time frame over which the frequency of calls spanned was not specifically referenced in their declarations and, therefore, may not be inconsistent. However, to the extent their testimony becomes so, "testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes." *Industrial Hard Crome, Ltd. v. Hetran, Inc.,* 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000); *see United States v. Taylor,* 166 F.R.D. 356, 362 n.6 (M.D.N.C. 1996) (testimony of Rule 30(b)(6) designee does not bind corporation in sense of judicial admission). Calli Baker's

> apparently construes the Rule as absolutely binding a corporate party to its designee's recollection unless the corporation shows that contrary information was not known to it or was inaccessible. Nothing in the advisory committee notes indicates that the Rule goes so far.

*A.I. Credit Corp. v. Legion Ins. Co.,* , 637 (7th Cir. 2001). Thus, any inconsistent testimony by Mary Paquin or B.J. Paquin would not be excluded, but would be subject to cross-examination and impeachment.

As to Laura Whitesides, her testimony is excluded pursuant to Rule 37(c)(1) as prejudicial to Calli Baker's. Calli Baker's did not have an opportunity to depose Laura Whitesides and Calli Baker's cannot cure this surprise, as there is no opportunity at this late date to depose her. Additionally, Firehouse has provided no explanation for the untimely disclosure of this witness. Having reviewed all Rule 37(c)(1) factors, the Court finds that Firehouse has failed to show that this late disclosure was

15

harmless or substantially justified.[7]  As such, Calli Baker's motion in limine is granted in part, and the testimony of Laura Whitesides in excluded.

## VI:     Motion to Exclude Evidence of Donations

On August 7, 2011, Calli Baker's filed a motion in limine to exclude evidence of donations and for other relief relating to improper pretrial publicity.  This motion concerns various press releases and media coverage of charitable donations made by Firehouse's charitable arm, the Firehouse Subs Public Safety Foundation.  Between jury selection in this case and when Calli Baker's filed this motion in limine on August 7, 2011, several broadcasts and publications appeared in South Carolina media concerning donations made by Firehouse in South Carolina.

At the motions hearing, the parties agreed that no evidence regarding these donations may be presented at trial.  Additionally, the parties agreed that Firehouse will refrain from issuing press releases concerning any donations or other charitable efforts undertaken in South Carolina until after the jury renders a verdict in this case.  Similarly, neither party objects to the Court's conducting limited voir dire to determine if the jury has been improperly influenced or if Calli Baker's has been prejudiced by the press releases and media coverage.

Calli Baker's also moves to exclude evidence concerning "*any* donations or charitable contributions made by [Firehouse] and/or the Firehouse Subs Public Safety Foundation" as irrelevant and inadmissible pursuant to Rules 402 and 403 of the Federal Rules of Evidence.  Calli Baker's argues that Firehouse's press releases and related media coverage constitute solicited media coverage and therefore

---

[7]Given the fact that Bryan Paquin, Sr., Mary Paquin, and B.J. Paquin each plan to testify as to the issue of actual confusion at Three Alarm Subs and the fact that their testimony is almost identical in regards to the number of calls received per week, it appears that Laura Whitesides' testimony on this issue constitutes "needless . . . cumulative evidence" and should also be excluded pursuant to Rule 403 of the Federal Rules of Evidence.

16

this evidence is not relevant to the issue of commercial strength of the mark pursuant to *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 125 (4th Cir. 1990) (stating that the court should consider "unsolicited media coverage" when evaluating a mark's commercial strength).

Clearly, "unsolicited media coverage" is relevant to the commercial strength of a mark and admissible. *Id.* With regard to solicited media coverage, Firehouse argues that it is also admissible evidence relevant to the "similarity of advertising" factor in the likelihood of confusion test. *See generally George & Co.,* 575 F.3d at 393 (stating one factor the court looks to in order to determine if a likelihood of confusion exits is "the similarity of advertising used by the markholders" (citing *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir. 1984))). Specifically, Firehouse argues that its press releases and similar charitable efforts constitute advertising, as Firehouse even pays a public relations firm to issue press releases and take other actions to obtain as much media coverage as possible. Moreover, Firehouse argues that the parties have already consulted concerning exhibits for trial and it thought Calli Baker's was not going to object to this evidence, as Calli Baker's intended to introduce the same types of documents.

The Court denies Calli Baker's motion in limine to exclude evidence of *any* donations on the basis that this motion is untimely under the scheduling order. Additionally, it appears that the unsolicited media coverage is relevant under *Perini* as evidence of the commercial strength of a mark and therefore admissible. With respect to the solicited media coverage, it appears that this evidence is relevant to the "similarity of advertising" factor of the likelihood of confusion test and therefore also admissible.

## Conclusion

Based on the foregoing, it is **ORDERED** that:

(1) Firehouse's Motion in Limine [Docket #166] is **GRANTED in part, DENIED in part**;

(2) Calli Baker's Motion in Limine [Docket #167] is **GRANTED in part, DENIED in part**; and

(3) Calli Baker's Motion in Limine to Exclude Evidence of Donations and For Other Relief [Docket #193] is **DENIED.**

    **IT IS SO ORDERED.**

                                    s/ R. Bryan Harwell
                                    R. Bryan Harwell
                                    United States District Judge

August 11, 2011
Florence, South Carolina