IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Firehouse Restaurant Group, Inc., a Florida ) | C/A No. 4:09-cv-00618-RBH |
| corporation, Three Alarm Subs, Inc., a ) | |
| South Carolina corporation, and Fireside ) | |
| Restaurant Company, Inc., a South Carolina ) | |
| corporation, ) | |
| ) | |
|        Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| Scurmont LLC, d/b/a Calli Baker's ) | |
| Firehouse Bar & Grill, and Heath ) | |
| Scurfield, an individual, ) | |
| ) | |
|       Defendants. ) | |
| _____ ) | |

      This is a trademark dispute between competing restaurants. Firehouse Restaurant Group, Inc. ("FRG") is the franchiser of the FIREHOUSE SUBS® restaurant franchise (hereinafter "FRG Restaurants") that operates more than 350 locations throughout various parts of the United States, including Myrtle Beach, South Carolina. The core menu item offered by FRG Restaurants is submarine-style sandwiches. Three Alarm Subs, Inc. ("Three Alarm") and Fireside Restaurant Company, Inc. ("Fireside") are franchisees who own and operate FRG Restaurants in the Myrtle Beach area.[1] Scurmont, LLC ("Scurmont") also operates a restaurant in Myrtle Beach, South Carolina under the name CALLI BAKER'S FIREHOUSE BAR & GRILL ("CALLI BAKER'S"). CALLI BAKER'S is a full-service restaurant that offers a variety of menu items and incorporates a firehouse theme in its décor and menu.

_____

[1]FRG, Three Alarm, and Fireside, collectively, will hereinafter be referred to as the "Firehouse Plaintiffs" for the purposes of this Order.

1

Heath Scurfield ("Scurfield") is the sole member of Scurmont and is an active-duty firefighter with Horry County Fire Rescue.[2]

## **Factual Background and Procedural History**

FRG filed for and obtained more than 60 federal trademark and service mark registrations for its marks from the United States Patent and Trademark Office ("USPTO").  Of the 60 or more registered marks obtained by FRG, one mark is the term "FIREHOUSE" for use in restaurant services: Registration Number 3,173,030 ("FIREHOUSE word mark").  This mark was the subject matter of the Calli Baker's Defendants' claims, specifically their Third Cause of Action for Trademark Cancellation due to Fraud. In their claims, the Firehouse Plaintiffs asserted against the Calli Baker's Defendants, 34 of FRG's United States federal registrations (the "Registrations"), which include various forms of FIREHOUSE® and FIREHOUSE SUBS® marks used  in connection with their business.  The Registrations cover use of FRG's marks in connection with a broad scope of goods and services that include restaurant services, food products, sandwich platters, sandwiches, drinks, soups, salads, cookies, brownies, catering services, and restaurant franchising.

In June 2008, counsel for FRG issued a cease and desist letter to Scurfield stating that CALLI BAKER'S use of the word "Firehouse" was infringing on FRG's trademarks.  In March 2009, the Calli Baker's Defendants filed an action for declaratory judgment of non-infringement and also asserted various other claims.  The Firehouse Plaintiffs filed a separate lawsuit alleging trademark infringement under the Lanham Act and common law.  The cases were consolidated in January 2010. On June 2, 2010, the Calli Baker's Defendants filed their [46] Second Amended Complaint.  The Second Amended Complaint asserted three causes of action against the Firehouse Plaintiffs: (1) Declaratory Judgment for Non-

---

[2]Scurmont and Scurfield, collectively, will hereinafter be referred to as the "Calli Baker's Defendants" for the purposes of this Order.

2

Infringement of Trademarks, (2) South Carolina Unfair Trade Practices Act, and (3) Trademark Cancellation Due to Fraud.  On July 6, 2010, the Firehouse Plaintiffs filed their [49] Answer and Affirmative and Additional Defenses to Plaintiffs' Second Amended Complaint, Counterclaim, and Demand for Attorneys' Fees and Jury Trial.  Accordingly, the Firehouse Plaintiffs alleged the following claims against the Calli Baker's Defendants: (1) Federal Trademark Infringement (15 U.S.C. § 1114), (2) False Designation of Origin (15 U.S.C. § 1125(a)), (3) Common Law Trademark Infringement and Unfair Competition, and (4) Unjust Enrichment.[3]

In December 2010, among other motions, the Calli Baker's Defendants filed a [81] Motion for Partial Summary Judgment.  In February 2011, the Firehouse Plaintiffs filed a [135] Motion for Summary Judgment or, in the alternative, Partial Summary Judgment on all counts asserted in the Second Amended Complaint and all remaining counterclaims.  On June 30, 2011, the Court held a hearing on these motions. By Order dated July 8, 2011, the Court denied the Calli Baker's Defendants' [81] Motion for Partial Summary Judgment, and granted in part, denied in part, the Firehouse Plaintiffs' [135] Motion for Summary Judgment or, in the alternate, Partial Summary Judgment.  Specifically, the Court granted summary judgment in favor of the Firehouse Plaintiffs on the Calli Baker's Defendants' Second Cause of Action for violation of the South Carolina Unfair Trade Practices Act.  Additionally, the Firehouse Plaintiffs' claim for Unjust Enrichment was deemed withdrawn and therefore moot.  Moreover, based on the nature and the remaining claims and for an orderly disposition of the case, the parties were realigned as reflected in the current caption of the case without objection.

---

[3]The Firehouse Plaintiffs also alleged the Calli Baker's Defendants violated South Carolina's Unfair Trade Practices Act.  However, this counterclaim was withdrawn with the Calli Baker's Defendants' consent.  *See* Text Order, Doc. #64 (denying as moot the Motion to Strike Counterclaim).

3

A jury trial of this case began on August 15, 2011.  After a five day trial, the jury unanimously found that the Calli Baker's Defendants had not infringed any of the 34 registered trademarks asserted by FRG.  Further, the jury unanimously found that "the [Calli Baker's] Defendants have proved by clear and convincing evidence that Plaintiff [FRG] obtained the registration for the trademark FIREHOUSE, Registration Number 3,173,030, through fraud on the U.S. Patent & Trademark Office."  Verdict Form, Doc. #218.  On August 22, 2011, Judgment was entered in favor of the Calli Baker's Defendants; the Court ordered the cancellation of the FIREHOUSE word mark based on the jury's finding that FRG committed fraud on the USPTO and ordered that the Calli Baker's Defendants shall recover costs from the Firehouse Plaintiffs.

On August 29, 2011, the Firehouse Plaintiffs filed the instant [226] Motion for Judgment as a Matter of Law as to Defendants' Claim of Fraud . . . or in the Alternative a New Trial as to All Issues, to which the Calli Baker's Defendants have filed a response in opposition; the Firehouse Plaintiffs have also filed a reply.  The Calli Baker's Defendants have filed the instant [227] Motion for Attorneys' Fees and [228] Bill of Costs,[4] to which the Firehouse Plaintiffs have filed a response in opposition and objections, respectively.  The Court will now address each of these issues in turn.[5]

## Discussion

**I:**    **Firehouse Plaintiffs' Motion for Judgment as a Matter of Law or Alternatively a New Trial**

In their Motion for Judgment as a Matter of Law, the Firehouse Plaintiffs move the Court for an Order entering judgment as a matter of law on the Calli Baker's Defendants' claim for cancellation due

---

[4]On September 26, 2011, the Calli Baker's Defendants filed an Amended Bill of Costs to correct what appeared to be a scrivener's error. *See* Doc. #239.

[5]Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion.  Unless so ordered, motions may be determined without a hearing."  The issues have been briefed by the parties, and the Court believes a hearing is not necessary.

to fraud on the USPTO as to registration of the FIREHOUSE word mark, Registration No. 3,173,030, or, in the alternative, a new trial on all claims,  pursuant to Fed. R. Civ. P. 50(a) and 59.  "A district judge may overturn a jury verdict on a motion [pursuant to Fed. R. Civ. P. 50] only if 'there is no legally sufficient evidentiary basis for a reasonable jury to have found for [the prevailing] party.'" *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.,* 962 F.2d 316, 318 (4th Cir. 1992) (citing Fed. R. Civ. P. 50(a)(1)).  "In making this determination, the judge is not to weigh the evidence or appraise the credibility of witnesses, but must view the evidence in the light most favorable to the non-moving party and draw legitimate inferences in its favor." *Id.* (citation omitted).  A party may join a motion for a new trial with a motion for judgment after trial, or request a new trial in the alternative.

A. Claim of Insufficient Evidence to Support Jury Verdict as to Fraud

First, the Firehouse Plaintiffs argue that the jury's verdict that FRG committed fraud in obtaining the registration of the FIREHOUSE word mark must be set aside as a matter of law because there was insufficient evidence to support the jury's verdict.  "Fraud on the [USPTO] in connection with trademark registration requires that the following elements be alleged and proven: (1) The challenged statement was a *false* representation regarding a *material* fact[;] (2) The person making the representation *knew* that the representation was false ('scienter')[;] (3) An *intent to deceive* the USPTO[;] (4) Reasonable *reliance* on the misrepresentation[; and] (5) *Damage* proximately resulting from such reliance." J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 31:61 (West 2010).  As such, a trademark is obtained fraudulently only if the applicant or registrant "knowingly makes a false, material representation with the intent to deceive the [USPTO]. *In re Bose Corp.,* 580 F.3d 1240, 1245 (Fed. Cir. 2009); *see Brittingham v. Jenkins,* 914 F.2d 447, 453-54 (4th Cir. 1990) ("A number of courts have held that procurement of a trademark registration through the use of false or misleading statements does not constitute fraud within the meaning of 15 U.S.C. § 1115(b)(1) unless the statements were both material to the decision to grant

5

the registration and made with a deliberate intent to defraud."). Specifically, the Firehouse Plaintiffs argue that there is no evidence in the record, let alone clear and convincing evidence, to support two critical elements of the Calli Baker's Defendant's cancellation due to fraud claim: (1)intent to deceive and (2) materiality of the misrepresentation.

### 1. Intent to Deceive

According to the Firehouse Plaintiffs, the Calli Baker's Defendants "presented no evidence at trial to establish, under any standard, that FRG knowingly withheld information from the USPTO with a specific intent to deceive. [Thus,] Defendants, as a matter of law, could not and did not meet their burden." Doc. #226-1, p.6. However, the Calli Baker's Defendants argue that there was sufficient evidence in the record to support the conclusion that FRG intended to deceive the USPTO, and the Court agrees with the Calli Baker's Defendants.

In seeking cancellation of the FIREHOUSE word mark due to fraud on the USPTO, the Calli Baker's Defendants claimed that FRG

> submitted its oath [to the USPTO], pursuant to 18 U.S.C. § 1001, that to the best of its knowledge and belief no other person, firm, corporation or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in commerce with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive . . . . [despite the fact that] FRG knew that there were many other pre-existing food and beverage businesses with the name FIREHOUSE or some substantially similar variation thereof.

Second Amended Compl. ¶¶45 & 47, Doc. #46. Firehouse Grill & Pub, which has been registered and doing business in Tampa, Florida, since October 4, 1990, was one of the alleged pre-existing businesses using the FIREHOUSE word mark at issue in this case. Sorensen testified both in his deposition and during trial that he first learned about Firehouse Grill & Pub in or around August 2002, which was approximately six months **prior** to FRG's filing its application for the FIREHOUSE word mark

6

registration. *See* Doc. #226-3, p.2; Doc. #226-4, pp.5-6.  Additionally, Sorensen acknowledged that Firehouse Grill & Pub "predated" FRG Restaurants and "may" have superior rights in their market area. *Id.*  Similarly, Dillip Kanji, the Tampa area franchisee for FRG Restaurants, stated in correspondence around the same time that "[s]ince [Firehouse Grill & Pub has] been in operation longer than we have, they have superior rights." Doc. #236-4, p.2.  While the Firehouse Plaintiffs claim that the Firehouse Grill & Pub was a "pool hall" and, therefore, they did not believe that there was any likelihood of confusion or conflict between it and FRG Restaurants, the evidence, viewed in the light most favorable to the Calli Baker's Defendants, suggests that the Firehouse Plaintiffs actually considered Firehouse Grill & Pub something more than a "pool hall" and realized that there was a likelihood of confusion between the two restaurants. *See, e.g.,* Doc. #236-2, p.2 (letter from Sorensen to Kanji referring to Firehouse Grill & Pub as "food and beverage establishment" and stating "nothing can be gained from their learning about us and our registered mark.  To the contrary, the longer we operate at the same time, particularly given our recent press and notoriety in the restaurant industry, will only strengthen our rights *vis a vis* any rights they may have."); Doc. #226-6, p.2 (letter from Sorensen to Firehouse Grill & Pub owner Bryan Carroll referring to the Firehouse Grill & Pub as a "restaurant"); Doc. #236-7, p.2 (email from Kanji to Sorensen stating "the potential for customer confusion does exist" and "[i]n fact we have had a few people already who have come in the New Tampa location and asked if we are connected to Firehouse Grill & Pub.").  In fact, Kanji considered Firehouse Grill & Pub's  existence in the Tampa market "a serious matter" that "needs to be addressed now not later." Doc. #236-4, p.2.

On March 12, 2003, FRG filed its application for the FIREHOUSE word mark with the USPTO at Sorensen's direction. When FRG filed the FIREHOUSE word mark application, it declared that "no other person, firm, corporation, or association has the right to use the mark in commerce" in a manner likely to cause confusion, even though it was aware of the prior, senior use by Firehouse Grill & Pub. *See*

Doc. #226-11, p.70.  As a defense to the cancellation due to fraud claim, Sorensen testified that, prior to

filing the FIREHOUSE word mark application, he reached a coexistence agreement with Bryan Carroll,

the owner of the Firehouse Grill & Pub.  Specifically, Sorensen testified during direct examination that

he had a conversation with Carroll, and that Carroll indicated that he had no problem with FRG opening

up a number of restaurants in the Tampa area.  Notably, however, there is no evidence in the record that

Sorensen ever told Carroll that he was going to apply for the exclusive right to use the word "Firehouse"

in connection with restaurant services.  Moreover, there is evidence in the record from which a reasonable

jury could infer that no coexistence agreement actually existed between FRG and Firehouse Grill & Pub.

On cross-examination, counsel for the Calli Baker's Defendants obtained admissions from Sorensen that

his conversation with Carroll had not been planned or arranged in advance; that Sorensen dropped by the

Firehouse Grill & Pub on a busy Saturday night unannounced; that Carroll was supervising a pool

tournament that night; that Sorensen waited at the bar at least an hour before he was able to speak with

Carroll; that his conversation with Carroll lasted less than ten minutes; and that Carroll told him "good

luck" and shook his hand. *See* Doc. #236-5, pp.8-9.  Additionally, on April 2, 2003, over twenty days

**after** submitting the FIREHOUSE work mark application, Sorensen wrote a letter to Carroll, in which

it appears he **proposed** a coexistence agreement and enclosed a check for $5,000. *See* Doc. #226-6, p.2.

In the letter, Sorensen writes the following:

> You may not remember me, but earlier this month while in Tampa, I
> stopped by your restaurant. It was a pleasure meeting you and introducing
> you to my business. . . .
>
> As part of our Tampa plan, . . . we will be opening additional locations in
> the Temple Terrace section of Tampa. We are considering locating a few
> stores in your neighborhood. We do not expect these stores to interfere at
> all with your business. Nevertheless, *we would like to reach an
> understanding with you* that these few stores and your business will co-
> exist in this overlapping area while maintaining a friendly relationship.  As
> a token of our goodwill, *we would be willing to make a payment to you* in

the amount of $5,000.00. . . . *We will continue our growth elsewhere if you are uncomfortable with this arrangement.*

I have enclosed a check for $5,000.00 and an agreement confirming this understanding. *If you would like to accept this offer as stated in the attached agreement*, simply cash the enclosed check. Please also return a signed copy of the agreement to me for my records.

*Id.* (emphasis added). At trial, Sorensen admitted that he did not mention anything about the payment of $5,000 to Carroll during their conversation or anytime prior to mailing the April 2, 2003, letter and, when Sorensen followed up with Carroll after sending the letter and proposed coexistence agreement, Carroll stated that his wife was "going to talk to our attorney about it, and we'll go from there." Doc. #226-3, pp.7-8, 10. Moreover, Sorensen testified that Carroll never cashed the check or signed the proposed agreement. *Id.* at 11. A reasonable jury could find that Sorensen's subsequent letter, proposed coexistence agreement, and offer to pay $5,000 to Carroll constituted an implicit acknowledgment that there was no clear agreement or understanding between Sorensen and Carroll prior to FRG's filing its application for the FIREHOUSE word mark.

Viewing the evidence in the light most favorable to the Calli Baker's Defendants, the legitimate inference to be drawn from this evidence is that there was, in fact, no consent agreement between the parties prior to FRG's filing the FIREHOUSE word mark application with the USPTO.[6] Moreover, the Court finds that there is legally sufficient evidence in the record upon which a reasonable jury could conclude that Sorensen knew of Firehouse Grill & Pub's senior use of the word "Firehouse" and believed that there was a likelihood of confusion between FRG Restaurants and Firehouse Grill & Pub at the time

---

[6]George M. Thomas, the Firehouse Plaintiffs' own trademark expert, also testified that a consent agreement may be filed with the USPTO, and that the USPTO "would evaluate that . . . and make a decision as to whether or not to allow the application to be approved and registration issued." Doc. #236-1, p.6. The fact that there is no evidence that any such agreement was ever filed with the USPTO further supports the inference that no coexistence agreement existed between FRG and Firehouse Grill & Pub.

FRG submitted the FIREHOUSE word mark application at his direction. Based on the foregoing, a reasonable jury could have found, by clear and convincing evidence, that FRG intended to deceive the USPTO when it filed its application for the FIREHOUSE word mark, to which it knew it was not entitled, and declared that "no other person, firm, corporation, or association has the right to use the mark in commerce"[7] in a manner likely to cause confusion.

### 2. Materiality of the Misrepresentation

The Firehouse Plaintiffs also argue that there is not legally sufficient evidence to support the jury's finding of fraud because there is no evidence that FRG made a "material" misrepresentation. Specifically, the Firehouse Plaintiffs argue that "there is no evidence in the record to support a conclusion that the examiner would not have issued or published the mark for opposition and issue[d] the certificate had it known of the evidence submitted by Defendants in support of their claim." Doc. #226, p.2. In the context of fraud relating to a trademark application, a material misrepresentation to the USPTO exists where, "but for the misrepresentation, the federal registration either would not or should not have issued." *See* J.

---

[7]The Firehouse Plaintiffs also argue that "Mr. Sorensen testified that he believed the [Firehouse Grill & Pub] did not operate in interstate commerce, and Defendants presented no evidence to the contrary. . . . The jury was incapable of making any assessment on the interstate commerce issue because Defendants did not present any evidence or testimony regarding whether the [Firehouse Grill & Pub] actually operated in interstate commerce." Doc. #226-1, p.12. However, the jury could have reasonably found Sorensen's testimony not credible on this issue. When Defense counsel asked Sorensen about interstate commerce, he testified that he understood interstate commerce to mean that you do business across state lines or you serve people that are from other states in your restaurant. Aside from the inference that can be reasonably made that a restaurant in the State of Florida, which is known for attracting vacationers, would serve customers from other states, Sorensen also testified about a trademark application that he signed and submitted to the USPTO in 1995, when there was only one FRG Restaurant in Florida. In that particular application, Sorensen represented, under oath, that FRG was engaged in interstate commerce at that time. *See* Doc. #236-12, p.2. Therefore, there is sufficient evidence in the record for the jury to conclude that Sorensen believed that a single location restaurant in Florida, such as Firehouse Grill & Pub, was doing business in interstate commerce.

Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 31:67 (West 2010); *cf. United States v. David,* 83 F.3d 638, 640 n.2 (4th Cir. 1996) (stating that materiality has a specialized legal meaning and defining materiality as having "a natural tendency to influence agency action or is capable of influencing agency action.").

The Firehouse Plaintiffs argue that the application file for the FIREHOUSE word mark contains a letter dated July 7, 2005, which was submitted by a lawyer on behalf of its third party clients. The letter is addressed to the FIREHOUSE word mark application examiner and notified her of 27 third party restaurants using the word "Firehouse" in their names. "After receiving the letter and entering it into the Application file, the USPTO <u>allowed</u> the Application and it matured into registration number 3,173,030," the FIREHOUSE word mark. Doc. #226-1, p. 15. Accordingly, the Firehouse Plaintiffs conclude that "[t]he USPTO did not consider the Letter or its disclosures material to the Application." *Id.* They assert that the Firehouse Grill & Pub is similar to the 27 other restaurants that were included in the letter. Specifically, they argue that the Calli Baker's Defendants "offered no evidence, much less clear and convincing evidence, that the examiner would not have allowed the Application to register had the Firehouse Grill & Pub in Tampa, been added to the list of 27 other restaurants, bars and pool halls disclosed in the Letter. . . . If the examiner did not consider restaurants and bars named 'Firehouse' and 'Firehouse Pub' to be material, then, the Tampa 'Firehouse Grill & Pub' would not have been material either." *Id.* at 18. In response, the Calli Baker's Defendants contend

> Plaintiffs' argument regarding materiality overlooks the simple fact that the [US]PTO will not issue a trademark registration unless the applicant signs the declaration, which is assumed to be truthful. George Thomas' testimony that the [US]PTO will not issue a trademark registration unless the applicant submits a signed declaration demonstrates that the misrepresentation, or omission, regarding the other senior users, was material. Sorensen's testimony regarding the seriousness of the matter, combined with his attempt to enter into a co-existence agreement with [Firehouse Grill & Pub], further demonstrates the materiality of the

11

information that was known to him. . . .

> The document upon which Plaintiffs rely is a copy of a July 7, 2005 letter
> from an attorney to the trademark examiner, advising her that there are
> other "firehouse" restaurants around the country. The letter included a list
> of 27 establishments, including the Johnson City Firehouse. The Tampa
> [Firehouse Grill & Pub] was not included on the list.  Plaintiffs make the
> conclusory assumption that the [US]PTO "did not consider the Letter or
> its disclosures material to the Application." Notably, however, the letter
> did not disclose the central, important fact that was known to FRG, i.e.,
> whether any of those 27 establishments had prior or senior rights to use the
> FIREHOUSE [word] mark. . . . There is no evidence that the trademark
> examiner investigated further to determine whether, in fact, any of those
> other restaurants had senior rights to use the mark. The fact that the letter
> was sent to the [US]PTO does not cure the material misrepresentation in
> FRG's sworn application.

Doc. #236, pp.6 & 8 (internal citations omitted).  In reply, the Firehouse Plaintiffs attack the Calli Baker's

Defendants' reasoning:

> According to Defendants, because the USPTO will not allow an
> application to register without a signed declaration, any registration
> challenged for fraud <u>automatically</u> satisfies the materiality requirement
> because the applicant signed the declaration. If the materiality prong of the
> test for fraud can be satisfied simply by noting that no application will
> mature into a registration without a signed declaration, then the materiality
> prong is a nullity.

Doc. #238, p.10.

The Court finds unpersuasive the Firehouse Plaintiffs' argument regarding whether there is legally

sufficient evidence to support the jury's finding of fraud and, specifically, the finding that FRG made a

"material" misrepresentation to the USPTO.  Moreover, the Court disagrees with the Firehouse Plaintiffs'

contention that the Calli Baker's Defendants' view of the signed declaration requirement effectively

"reads the materiality requirement out of the rule." *Id.*  The Firehouse Plaintiffs' characterization of the

Calli Baker's Defendants' argument is oversimplified.  If an applicant is prevented from signing the

declaration required to register a mark in good faith because it both knows of a senior user with superior

12

rights and believes there is likelihood of confusion, but it signs the declaration stating otherwise anyway

in order to get the registration, then it has made a "material" misrepresentation. In such a situation, *but*

*for* the misrepresentation (i.e., the applicant signing the declaration despite both knowing of a senior user

with superior rights and believing there exists a likelihood of confusion) in the applicant's declaration,

the registration "would not or should not have issued." That misrepresentation, therefore, is a "material"

misrepresentation by definition.

      In the instant matter, the evidence of FRG's own actions supports the jury's finding of materiality.

The various correspondences between Sorensen and Kanji, as well as Sorensen's efforts to get Carroll to

sign a coexistence agreement, constitute evidence that FRG was concerned about Firehouse Grill & Pub's

superior rights and a likelihood of confusion.[8] Further, with regard to the letter containing the 27 other

"Firehouse" establishments, there is no information regarding whether those establishments had senior

rights to the FIREHOUSE word mark over FRG Restaurants like the Firehouse Grill & Pub. Viewing

the evidence in the light most favorable to the Calli Baker's Defendants, the Court finds that there is

legally sufficient evidence in the record upon which a reasonable jury could conclude that "the federal

registration either would not or should not have issued" absent FRG's misrepresentation that "no other

person, firm, corporation, or association has the right to use the mark in commerce" in a manner likely

---

[8]Under the proposed coexistence agreement, the Firehouse Grill & Pub would be required to "consent[]" to FRG's use of its trademarks, including "FIREHOUSE" and "FIREHOUSE SUBS," and "all other words, logos, names, slogans, trademarks, service marks and trade names used now or in the future . . . even if such uses or activities may cause confusion, dilution or otherwise conflict with Grill & Pub's use of the business name 'The Firehouse Grill & Pub' or any of Grill & Pub's trademarks or service marks." Doc. #226-6, p.3. Notably, the language of the proposed agreement and Sorensen's offer in the accompanying letter that "We will continue our growth elsewhere if you are uncomfortable with this arrangement" appear to represent an implicit acknowledgment that Firehouse Grill & Pub's superior rights would influence any decision by the USPTO regarding whether or not to issue FRG a registration containing the word "Firehouse." *See id.* at pp.2-3.

to cause confusion.  As stated above, there is legally sufficient evidence in the record upon which a reasonable jury could conclude that Sorensen knew of Firehouse Grill & Pub's senior use of the word "Firehouse" and believed that there was a likelihood of confusion between FRG Restaurants and Firehouse Grill & Pub at the time FRG submitted the FIREHOUSE word mark application at his direction.  Further, a reasonable jury could conclude that by directing its representative to sign the declaration, which states otherwise and without which a registration will not be issued, FRG made a material misrepresentation to the USPTO.  Based on the foregoing, a reasonable jury could have found, by clear and convincing evidence, that FRG made a material misrepresentation and obtained the FIREHOUSE word mark through fraud on the USPTO.

### B. Request for New Trial as to all Issues based on Alleged Inconsistent Verdict

Alternatively, the Firehouse Plaintiffs argue that the jury verdict should be set aside and a new trial granted as to all issues because it is inconsistent based on the evidence.  A new trial is warranted if (1) the verdict is against the weight of the evidence; (2) the verdict is based upon evidence which is false; or (3) the verdict will result in a miscarriage of justice. *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 594 (4th Cir. 1996).  Moreover, "[t]he proper remedy for an inconsistent verdict [is] a new trial." *Id.* at 598.  "In considering a new trial motion, the district court may weigh the evidence and consider the credibility of the witnesses." *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 200 (4th Cir. 2000).  The court's ruling is a matter resting within the sound discretion of the district court and is not reviewable upon appeal except in the most exceptional circumstances. *Lindner v. Durham Hosiery Mills, Inc.,* 761 F.2d 162, 168 (4th Cir. 1985) (citations omitted).  The Firehouse Plaintiffs argue that the verdict in the instant matter is inconsistent because, in order to find for the Calli Baker's Defendants on their cancellation due to fraud claim, "the jury must have determined that the mark Firehouse Grill & Pub [was] likely to cause confusion with FRG's FIREHOUSE [word] mark." Doc.

14

#226-1, p.21.  They argue that this is inconsistent with the jury's finding of no likelihood of confusion between CALLI BAKER'S and FRG's 34 registered marks and that the verdict "defies logic and common sense" because likelihood of confusion "is the essential element of both claims." *Id.* at 22.  In response, the Calli Baker's Defendants argue that the jury verdict is not inconsistent because "the test for the fraud claim hinges not upon a fact finding of whether there was a likelihood of confusion between [FRG's FIREHOUSE word mark] and [Firehouse Grill & Pub], but rather, what Robin Sorensen knew and subjectively believed, in March 2003 . . ." Doc. #236, p.13.  As explained below, the Court agrees with the Calli Baker's Defendants, and the Firehouse Plaintiffs' motion for a new trial is denied.

Essentially, the Firehouse Plaintiffs argue that the only way the jury could find that FRG's nondisclosure of the Firehouse Grill & Pub was a "material" misrepresentation for purposes of the cancellation due to fraud claim was if they also determined that "the use of [the word] FIREHOUSE by the [Firehouse Grill & Pub] would be confusingly similar to the operations of FRG's restaurants. . ." Doc. #226-1, p.22.  The fallacy in the Firehouse Plaintiffs' argument, however, is their mistaken belief that "[l]ikelihood of confusion is the essential element of both claims." *Id.*  In order to prevail on their claims for Trademark Infringement under the Lanham Act, False Designation of Origin, and common law trademark infringement and common law unfair competition, the Firehouse Plaintiffs had to prove that FRG (1) has a valid, protectable trademark <u>and</u> (2) that CALLI BAKER'S use of a reproduction or colorable imitation of the trademark is likely to cause confusion among consumers. *See, e.g., George & Co., LLC, v. Imagination Entm't Ltd.,* 575 F.3d 383, 393 (4th Cir. 2009) (citing 15 U.S.C. § 1114(1)(a)). In considering whether a likelihood of confusion exists between CALLI BAKER's and FRG's registered marks, the jury was instructed to examine the following factors:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the

similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; and (7) actual confusion.

*George & Co.,* 575 F.3d at 393 (citing *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir. 1984)).  In contrast, "[t]he claim of Fraud on the [USPTO] in connection with [the FIREHOUSE word mark] trademark registration requires that [the Calli Baker's Defendants] prove by clear and convincing evidence that [FRG] knowingly made a false, material representation of fact in connection with its trademark application for [the FIREHOUSE word mark], with the intent to deceive the [USPTO]. Jury Instructions, Doc. #220, pp.22-23.  Fraud in the procurement of a trademark registration is also a defense to a claim of trademark infringement. *See, e.g., Lone Star Steakhouse & Saloon v. Alpha of Virginia, Inc.,* 43 F.3d 922, 931 n.12 (4th Cir. 1995) (recognizing the defense and noting that trademarks procured by fraud are unenforceable).  To prevail on their claim of cancellation due to fraud, the Calli Baker's Defendants had the burden of proving fraud by clear and convincing evidence; notably absent from their burden is a requirement to prove a likelihood of confusion or an underlying case of trademark infringement.   If the Court was to adopt the Firehouse Plaintiffs' view of the law, in order to meet their burden as to the cancellation due to fraud claim, the Calli Baker's Defendants would have the additional burden to prove that the Firehouse Grill & Pub in Tampa would have ultimately prevailed on a trademark infringement claim against FRG Restaurants.  The Court has found no law supporting this proposition. Additionally, the Firehouse Plaintiffs have cited no case in support of their motion for a new trial in which the party asserting fraud had to also prove an underlying case of trademark infringement to prevail on the fraud claim.

The Firehouse Plaintiffs also appear to overlook the fact that the issue of likelihood of confusion is an "inherently factual" determination. *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.,* 962 F.2d 316, 318 (4th Cir. 1992).  As such, the jury's determination as to whether a likelihood of confusion exists between

16

CALLI BAKER's and FRG Restaurants does not indicate one way or another as to whether there exist a likelihood of confusion between FRG Restaurants and some other entity. Whether, in fact, trademark infringement could have been proven if there was a lawsuit between FRG Restaurants and the Firehouse Grill & Pub is irrelevant to the fraud analysis in this particular case. Here, the jury found that FRG obtained the registration for the FIREHOUSE word mark through fraud on the USPTO. There is legally sufficient evidence in the record upon which a reasonable jury could conclude that Robin Sorensen knew of Firehouse Grill & Pub's senior use of the word "Firehouse" and believed that there was a likelihood of confusion between FRG Restaurants and Firehouse Grill & Pub at the time FRG submitted the FIREHOUSE word mark application, in which it declared that "no other person, firm, corporation, or association has the right to use the mark in commerce." The jury also found that CALLI BAKER'S did not infringe upon any of FRG's 34 registered marks. The jury's verdict on these claims is neither "against the weight of the evidence" nor inconsistent.[9]

Even assuming, *arguendo,* that the jury's verdict is inconsistent, it appears that the Firehouse Plaintiffs' objection to the alleged inconsistent verdict and motion for new trial has been waived. The verdict form that was presented to the jury was a general verdict form with written questions pursuant to

---

[9]It appears that the only potential for an inconsistent verdict in this case would have been if the jury found for the Calli Baker's Defendants on their claim of cancellation due to fraud, but found for the Firehouse Plaintiffs on their claim that CALLI BAKER'S infringed on the FIREHOUSE word mark. The verdict form was specifically designed to avoid any such inconsistency because it specifically instructed the jury that, if it found for the Calli Baker's Defendants on the fraud claim, then it must also find for the Calli Baker's Defendants on the question of trademark infringement with respect to the FIREHOUSE word mark. Stated differently, the jury's finding that FRG obtained the registration for the FIREHOUSE word mark through fraud on the USPTO effectively resulted in a jury finding that the FIREHOUSE word mark was not a valid, protectible and enforceable mark. Because having a valid and protectible mark is an essential element of proving trademark infringement, the jury's verdict as to the cancellation due to fraud of the FIREHOUSE word mark effectively precluded the jury from simultaneously finding that the Calli Baker's Defendants infringed upon the FIREHOUSE word mark.

17

Rule 49(b) of the Federal Rules of Civil Procedure, not a special verdict form pursuant to Rule 49(a) as argued by the Firehouse Plaintiffs.[10]  The verdict form was prepared by the Court and approved by counsel for all parties prior to submission of the case to the jury.  After the verdict was published, the Court, at the request of counsel for Firehouse Plaintiffs, polled the individual jury members to confirm the unanimous verdict.  The Firehouse Plaintiffs did not assert any objection to the verdict, or request that the jury be ordered to continue their deliberations, based upon any alleged inconsistent verdict.  With no objections by counsel, the Court discharged the jury. In *White v. Celotex Corp.*, the Fourth Circuit held that the failure to object to an alleged inconsistent verdict pursuant to Rule 49(b) prior to the discharge of the jury waives a party's right to seek a new trial. 878 F.2d 144, 146 (4th Cir.1989); *see Essex v. Prince George's County Md.,* 17 F. App'x 107, 118 n.4 (4th Cir. 2001) ("[I]f trial counsel fails to object to any asserted inconsistencies and does not move for resubmission of the inconsistent verdict before the jury is discharged, the party's right to seek a new trial is waived." (quoting *Brode v. Cohn*, 966 F.2d 1237, 1239 (8th Cir.1992))).  Specifically, the court stated in *White* that  "[p]roper respect for [Rule 49(b)] mandates that failure to bring any purported inconsistencies in the jury's verdict to the attention of the court prior to the release of the jury will constitute a waiver of a party's right to seek a new trial." *White,* 878 F.2d at 146.  "The purpose of such a Rule is plain, to promote the efficiency of trials by allowing the original deliberating body to reconcile inconsistencies without the need for another presentation of the evidence to a new body." *Id.*  All parties in this case, including the Firehouse Plaintiffs, acknowledge that "Rule 49(b) requires a pre-discharge objection to an inconsistent verdict form to preserve error." Doc.

---

[10]A "general verdict" is a verdict "by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions." Black's Law Dictionary, 1592 (8th ed.2004). A "special verdict," by contrast, is a verdict "that gives a written finding for each issue, leaving the application of the law to the judge." *Id.* at 1593. The verdict at issue in this case is a general verdict.

18

#238, p.13.  Thus, the Firehouse Plaintiffs' motion for a new trial is also denied on the alternative ground that they failed to object to any alleged inconsistent verdict prior to the Court's discharging the jury.

**II:**    **Calli Baker's Defendants' Motion for Attorneys' Fees & Bill of Costs**

The Calli Baker's Defendants have moved for an award of attorneys' fees pursuant to § 35(a) of the Lanham Act, which authorizes a court "in exceptional cases [to] award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  It is undisputed that the Calli Baker's Defendants were the prevailing party in this matter.  An examination of the legislative history of 15 U.S.C. § 1117 clearly indicates that Section 35 was intended to deter both willful infringement by a defendant and abusive litigation brought by an oppressive plaintiff, as evidenced by the following:

> Effective enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights.  It would be unconscionable not to provide a complete remedy including attorney fees for acts which courts have characterized as malicious, fraudulent, deliberate and willful . . .
>
> The bill would also permit prevailing defendants to recover attorney fees in exceptional cases.  This would provide protection against unfounded suits brought by trademark owners for harassment and the like.

*See Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.,* 958 F.2d 594, 600 (4th Cir. 1992) (quoting S. Rep. No. 1400, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N 7132, 7136-7137).  The Fourth Circuit has recognized two separate standards to prove an "exceptional" case depending on whether the prevailing party is the plaintiff or defendant. *See id.* at 599-600.  In doing so, the court has specifically pointed out that "[a] prevailing defendant who has been wrongfully charged of falsely designating origin has only one source of restitution, recovery of attorney fees." *Id.* ("[W]e believe that a finding of bad faith on the part of a plaintiff is not necessary for a prevailing defendant to prove an 'exceptional' case under section 35(a) of the Lanham Act. . . . This is consistent, we think, with the report's discussion of attorney fees to a plaintiff as completing his remedy whereas the discussion of fees for a winning defendant is

couched in terms of providing the only remedy."). As such, the Fourth Circuit has held that, while a prevailing plaintiff must show that "the defendant's conduct was malicious, fraudulent, willful or deliberate in nature,"[11] a prevailing defendant needs to show "[s]omething less than bad faith" to prove an exceptional case under the Lanham Act for attorneys' fees to be awarded. *Id.* at 599 (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant,* 771 F.2d 521 (D.C. Cir. 1985)).

However, in *Retail Services, Inc. v. Freebies Publishing,* the Fourth Circuit noted that the different standards of proving an exceptional case for the award of attorneys' fees may not have survived the Supreme Court's decision in *Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994), in which the Court rejected a standard that differentiated between prevailing plaintiffs and defendants for the recovery of attorneys' fees in the copyright context. *Retail Servs.,* 364 F.3d at 550 n.7. In light of the footnote in *Retail Services* and the Supreme Court's decision in *Fogerty,* a recent district court decision from the Eastern District of North Carolina applied the higher bad faith standard to a prevailing defendant's request for attorneys' fees in a trademark infringement case and denied the request for attorneys' fees. *See Ray Commc'ns, Inc. v. Clear Channel Commc'ns,* No. 2:08-cv-24-BO, 2011 WL 3207805 (E.D.N.C. July 26, 2011). Similarly, this Court will apply the higher bad faith standard, but finds that it makes little difference because the Calli Baker's Defendants have not only made the "[s]omething less than bad faith" showing to prove that

---

[11]*Retail Servs. Inc. v. Freebies Publ'g,* 364 F.3d 535, 550 (4th Cir. 2004) (citation omitted).

20

this is an exceptional case,[12] but also have shown that FRG's conduct was "malicious, fraudulent, willful or deliberate in nature." *Retail Servs.,* 364 F.3d at 550.  In fact, the jury's verdict,  finding that FRG committed fraud on the USPTO, renders this case "exceptional."  As stated by the United States Senate, "It would be unconscionable not to provide a complete remedy including attorney's fees for acts which the courts have characterized as . . . fraudulent." S. Rep. No. 1400, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 7132, 7136.

Having determined that this is an "exceptional" case, the Court must now turn to the "reasonableness" of the Calli Baker's Defendants' request for attorneys' fees.  The reasonableness of attorneys' fees is determined by use of what is known as the "lodestar" method, pursuant to which the Court first determines a reasonable number of hours for the work expended and multiplies those hours by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983), *abrogated in part on other grounds, Gisbrecht v. Barnhart*, 535 U.S. 789 (2002).  The Court can then increase or decrease the award based on certain factors, such as "the results obtained." *Id.* at 434. To determine the reasonable number of hours and the reasonable rate to use in calculating the lodestar, the Court is guided by twelve

---

[12]The Court finds that there is ample support in the record that the Firehouse Plaintiffs' actions make this an "exceptional" case that warrants an award of attorneys' fees to the Calli Baker's Defendants.  The supporting reasons are enumerated in detail in the Calli Baker's Defendants' Memorandum in Support of Defendants' Motion for Attorneys' Fees [Doc. #227-1] and their subsequent reply memorandum [Doc. #240], which are both hereby adopted by the Court.  For example, it is clear from the record and the jury's verdict that: (1) FRG's factual certification to the USPTO was not only erroneous but fraudulent; (2) FRG has over asserted its trademark rights; (3) counsel for Firehouse Plaintiffs inappropriately asked Mr. Scurfield a question regarding prior settlement negotiations during trial; (4) FRG caused potentially prejudicial publicity, on the eve of trial, in connection with a donation that had been made nearly four months earlier; this resulted in a last-minute motion hearing by the Court; and (5) Firehouse Plaintiffs' asserted a South Carolina Unfair Trade Practices Act claim only to later withdraw the claim when threatened with a motion to strike.

non-exclusive factors.  These factors, which have been approved by the Supreme Court and embraced by

the Fourth Circuit are:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the level of skill required to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the customary fee; (6) whether the fee is fixed
> or contingent; (7) the time limitations imposed by the client or the
> circumstances; (8) the amount involved and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of the professional
> relationship with the client; and (12) awards in similar cases.

*Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir. 1994) (citing *Johnson v. Georgia*

*Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)); *see Blanchard v. Bergeron,* 489 U.S. 87, 91 n.5

(1989).  These factors were first adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216,

226 (4th Cir. 1978).[13]  In more recent cases, some courts restate the sixth factor as relating to counsel's

expectations at the outset of the litigation. *See Brodziak v. Runyon,* 145 F.3d 194, 196 (4th Cir. 1998)

(quoting *EEOC v. Service News, Co.,* 898 F.2d 958, 965 (4th Cir. 1990)).  Although the Court considers

all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not

always applicable. *Service News,* 898 F.2d at 965.

A. Reasonable Number of Hours

To establish the number of hours reasonably expended, the attorney "should submit evidence

supporting the hours worked . . ." *Hensley,* 461 U.S. at 433.  The number of hours should be reduced to

exclude "hours that are excessive, redundant, or otherwise unnecessary" in order to reflect the number

of hours that would properly be billed to the client. *Id.* at 434.  "Where the [movant] has failed to prevail

---

[13]The local rules in this District require that "[a]ny petition for attorney's fees . . . comply
with the requirements set forth in *Barber v. Kimbrell's, Inc.* . . . ." Local Rule 54.02
(D.S.C.).

22

on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. "[T]he district court may simply reduce the award to account for the limited success." *Signature Flight Support Corp. v. Landow Aviation L.P.,* 730 F. Supp. 2d 513, 528 (E.D. Va. 2010) (quoting *Hensley,* 461 U.S. at 436-37). In this case, counsel for the Calli Baker's Defendants, Ms. Sarah Day Hurley, has presented billing records showing that her firm, Turner Padget, spent 2163.7 hours working on this case. In evaluating whether these hours were reasonably expended, the Court addresses the relevant factors below.

### 1. Time and Labor Required

This case started more than three years ago when counsel for FRG sent a cease and desist letter to Scurfield, the owner of CALLI BAKER'S. The time and labor required to litigate this action have been substantial due to the nature of this litigation. Further, this has been a long, complex case. The record contains over two dozen motions, pretrial and post trial, each of which has been fully briefed. Many of these submissions, coupled with exhibits, are hundreds of pages long. The trial of the case took five days.

In response to the Calli Baker's Defendants' Motion for Attorneys' Fees, the Firehouse Plaintiffs argue that fees unrelated to the Calli Baker's Defendants' prevailing claims are not recoverable. Specifically, they argue that

> Despite not prevailing on four of their six claims and on eleven of their twelve affirmative defenses, Defendants seek attorneys' fees for all work performed by their counsel on this case, as well as for work unrelated to the litigation. For example, Defendants seek an award of fees for services performed six months prior to the filing of this lawsuit, for unsuccessfully opposing Firehouse's motions to dismiss, for unsuccessfully opposing Firehouse's summary judgment motion on Defendants' SCUTPA claim, for researching whether they could transform this two-restaurant dispute into a class action and then trolling for prospective class-action members, for researching whether they could register their own trademark, and for analyzing their prospective advertising campaigns. . . . Defendants . . . make no effort to distinguish their fees between arguably permissible and

> clearly impermissible time entries.  Defendants' blanket request must be
> denied.

Doc. #234, p.18.  Ms. Hurley has submitted a declaration that the request for attorneys' fees does not

include amounts that were "courtesy write-offs to the client" and was tailored specifically to "remove any

entries that reflect time dedicated primarily to claims or affirmative defenses that were dismissed by the

Court. As a result, 85.6 hours have been removed from the time entries previously billed to the client."

Doc. #227-2, p.5.[14]  The Court has carefully reviewed the Firehouse Plaintiffs' specific arguments

concerning "Defendants' four unsuccessful claims," "Defendants' fees for pre-suit activities,"

"Defendants' fees for work unrelated to this lawsuit," "Defendants' fees for their affirmative defenses,"

and "Defendants' fees for the unsuccessful portion of their cancellation claims."  The Court has also

reviewed the Calli Baker's Defendants' reply to these arguments.  As a result, the Court finds that the

hours claimed and fees sought by the Calli Baker's Defendants must be significantly reduced.

When a movant has pursued both successful and unsuccessful claims, "the most critical

factor . . . is the degree of success obtained." because when a movant has achieved only partial or limited

success, the product of hours reasonably expended on the litigation as a whole may be an excessive

amount." *Brodziak,* 145 F.3d at 196-97 (quoting *Hensley,* 461 U.S. at 436).  In determining whether to

reduce the compensable hours, the Court must first identify the relationship between the successful and

unsuccessful claims.  If the claims are based on different facts and legal theories, the movant should not

be compensated for time spent pursuing the unsuccessful claims because that effort was not "expended

---

[14]In the Calli Baker's Defendants' reply, counsel states: "Defense counsel has again
reviewed the time entries submitted and identified three entries that it consents to
withdraw–from 2/27/2009 (3.2 hours), 3/31/2009 (0.4 hours), and 4/8/2009 (0.6 hours).
While counsel feels the inclusion of these entries was justified because of commingling of
analysis and tasks, this withdrawal is consistent with the previous removal of other entries
that included 'class action.'" Doc. #240, p.11 n.13.

in pursuit of the ultimate result achieved." *Hensley,* 461 U.S. at 435.  However, "[i]n [some] cases, the [movant's] claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.*  In such a case, "the district court should focus on the significance of the overall relief obtained by the [movant] in relation to the hours reasonably expended on the litigation." *Id.*

        As an initial matter, it must be noted that although the Calli Baker's Defendants indicate that they eliminated entries for unsuccessful claims, they still seek fees for work dedicated to the litigation as a whole because the work related to "the same core set of facts." Doc. #240, p.9.  As argued by the Calli Baker's Defendants in their reply, the Court finds that the cancellation due to fraud claim/defense and the various Lanham Act claims at issue in this case were based upon the same core set of facts and interrelated legal theories.  However, a significant reduction is appropriate because many of the claims for which the Calli Baker's Defendants are not entitled to fees- whether because the claims were unsuccessful or because the claims are not the proper basis for a fee award- involve legal research and legal theories different from the research and theories for which fees are appropriate.  Specifically, upon the Firehouse Plaintiffs' Motion to Dismiss, the Court dismissed the Calli Baker's Defendants' claims of antitrust, unfair competition, and third-party use; dismissed FRG's founders from the lawsuit; and struck two of the Calli Baker's Defendants' affirmative defenses.  The Court also ordered the Calli Baker's Defendants to more definitely plead their fraud claim and later granted summary judgment against them on their South Carolina Unfair Trade Practices Act claim because the Calli Baker's Defendants failed to present any evidence of damages.  Further, the Calli Baker's Defendants seek reimbursement of fees for pre-suit activities and work unrelated to this lawsuit.  Since the Calli Baker's

Defendants' own reduction of their fee submission does not sufficiently address these issues, a more significant reduction is appropriate.

### 2. Novelty and Difficulty of the Questions Presented by the Lawsuit

This case involved claims of trademark infringement and unfair competition, which are generally recognized as complex areas of the law. The procedural posture added to the difficulty of this case. For example, both parties filed Complaints, involving a common set of facts and involving common issues of law, against each other in this District within a span of approximately five days; however, counsel for the Firehouse Plaintiffs opposed consolidation of the two lawsuits. This resulted in the subsequent filing of three separate motions to dismiss relating to the two separate lawsuits. Similarly, the total number of motions filed in this case, which is more than two dozen, gives some hint as to the difficulty of the matter.

The case was also complex and difficult due to the nature of the cancellation due to fraud claim, and the need for extensive discovery concerning USPTO records and third party usage of the FIREHOUSE word mark. In addition, the Firehouse Plaintiffs produced more than 7,000 pages of documents, including complex legal documents such as franchise agreements and extensive marketing studies, which they ultimately relied on at trial.

### 3. Level of Skill Required to Perform the Legal Service Properly

This case required great skill in both trademark enforcement/defense and business litigation. Given the complexity of this case, only the most experienced and most competent counsel would be able to handle it. Based on the results obtained, it is apparent that counsel for the Calli Baker's Defendants were competent in this area of representation.

### 4. Preclusion of Other Employment

Obviously, a significant amount of time was required from the lawyers assigned to the case. Time spent on this case meant less time for development of other clients' cases.

26

### 5. The Customary Fee

The Calli Baker's Defendants do not address this factor in their memorandum or reply, but Ms. Hurley does state in her petition in support of attorneys' fees that her rate in this case was $250/hour and she also submitted the declaration accompanying the request for attorneys' fees in *Super Duper, Inc. v. Mattel, Inc.,* 382 F. App'x 308 (4th Cir. 2010) as specific evidence of the prevailing market rate in this type of case.

### 6. Whether the Fee is Fixed or Contingent

This case is not contingency based.

### 7. The Time Limitations Imposed by the Client or Circumstances

Like many cases, this case involved thousands of pages of documentation and countless exhibits. There is no doubt that such voluminous documentation required many hours of review to understand and fully comprehend the nature and impact, if any, of such evidence. Given the sheer volume of documents at issue, it was reasonable for Ms. Hurley to solicit the assistance of other attorneys and paralegals at Turner Padget in order to get the work done.

### 8. The Amount Involved and the Results Obtained

Initially, as demonstrated by the pleadings, the Firehouse Plaintiffs were seeking both injunctive relief and monetary damages. The Firehouse Plaintiffs ultimately dropped their claim for monetary damages, and their claim for unjust enrichment was eventually dismissed. Upon the Firehouse Plaintiffs' Motion to Dismiss, the Court dismissed the Calli Baker's Defendants' claims of antitrust, unfair competition, and third-party use; dismissed FRG's founders from the lawsuit; and struck two of the Calli Baker's Defendants' affirmative defenses. The Court also ordered the Calli Baker's Defendants to more definitely plead their fraud claim and later granted summary judgment against them on their South Carolina Unfair Trade Practices Act claim because the Calli Baker's Defendants failed to present any

27

evidence of damages.    At trial, the Calli Baker's Defendants prevailed on all claims alleged by the Firehouse Plaintiffs for Trademark Infringement under the Lanham Act, False Designation of Origin, and common law trademark infringement and common law unfair competition on each of the 34 trademarks asserted by the Firehouse Plaintiffs.  Had the jury found that the Calli Baker's Defendants infringed on just one of FRG's Registrations, then CALLI BAKER'S would have been required to change the name of its business.  Additionally, the Calli Baker's Defendants prevailed on their claim of cancellation of the FIREHOUSE word mark due to fraud on the USPTO.  Despite prevailing on all claims at trial, the Court finds that a reduced fee is appropriate given that the Calli Baker's Defendants did not prevail on four of their six original claims, including any claims for which they would have been awarded damages.

### 9. Experience, Reputation, and Ability of the Attorneys

Counsel for the Calli Baker's Defendants, Ms. Hurley, has many years of experience as a business litigator, has handled previous trademark infringement claims, and has tried several business disputes to verdict.  Despite the fact that she has not been admitted to practice before the USPTO, Ms. Hurley's litigation experience was evident throughout this case.  Additionally, her experience and reputation and that of the different attorneys at her firm, Turner Padget, who worked on the file and as set forth in her declaration is exceptional.  As shown by the Declaration of Ms. Hurley, Turner Padget has been recognized as a leading litigation firm in South Carolina and the Southeast. Doc. #227-2, ¶¶2-4.  In addition, the law firm of Turner Padget handled this case is a very efficient manner.  Specifically, the Calli Baker's Defendants were represented by only one lawyer and one paralegal at trial, while the Firehouse Plaintiffs were represented by three lawyers and one paralegal.  Regarding their abilities, the Court has, among other things, reviewed the many filings that Ms. Hurley submitted to the Court, heard the arguments she made, and observed her conduct at trial.  The Court finds that these factors weigh in favor of approval of a reasonable amount of attorneys' fees in this action.

28

*10. Undesirability of the Case*

This factor appears to have no bearing on the reasonableness of the fees in this case.

*11. Nature and Length of the Attorney's Professional Relationship with the Client*

Ms. Hurley has not previously represented the Calli Baker's Defendants.

*12. Fee Awards in Similar Cases*

The amount of fees requested by counsel for the Calli Baker's Defendants is less than 20% of the fees awarded in the most recent trademark infringement case to be tried to a jury in South Carolina. *See Super Duper, Inc. v. Mattel, Inc.,* 382 F. App'x 308 (4th Cir. 2010) (affirming award of $2,643,844.15 in attorneys' fees after a seven-day trial). However, unlike the *Super Duper* case, counsel for the Calli Baker's Defendants only sought cancellation at trial and did not have to prove damages.

Taking all of these factors into account, including the reductions already made by the Calli Baker's Defendants themselves, the Court finds that it is appropriate to reduce the overall number of hours performed by counsel for the Calli Baker's Defendants by an additional 50%. *See In re Outsidewall Tire Litig.,* 748 F. Supp. 2d 557, 565 n.25 (E.D. Va. 2010) (collecting cases applying percentage-based fee reductions). The total number of hours for which counsel for the Calli Baker's Defendants are entitled to attorneys' fees, therefore, is **1079.75**.[15]

B. Reasonable Hourly Rate

The hourly rates included in a request for attorneys' fees must also be reasonable. *Hensley,* 461 U.S. at 433. A reasonable hourly rate is defined as "the 'prevailing market rate[] in the relevant community.'" *Rum Creek Coal Sales,* 31 F.3d at 175. The relevant community for determining the prevailing market rate is generally the community in which the court where the action is prosecuted sits.

---

[15] *See supra* note 14.

*Id.* This determination is fact intensive and the Court may look to what attorneys earn from paying clients for similar services in similar circumstances. *See Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984). "While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client." *Rum Creek Coal Sales,* 31 F.3d at 175 (citing *Gusman v. Unisys Corp.,* 986 F.2d 1146 (7th Cir. 1993)).

According to Ms. Hurley's declaration, her "hourly rate in this case is $250.00 per hour." Doc. #227-2, ¶6. Additionally, she states that "[t]he hourly rates charged by Turner Padget's lawyers are reasonable and comparable to, if not less than, rates charged by attorneys at other firms in South Carolina for comparable work." *Id.* ¶16. Ms. Hurley also submitted the declaration accompanying the request for attorneys' fees in the *Super Duper* case as specific evidence of the prevailing market rates in this community.[16] The Firehouse Plaintiffs do not appear to object to the reasonableness of the hourly rates charged by Ms. Hurley and the other members of Turner Padget who worked on this case. Based on (1) the Court's own knowledge of hourly rates in this District; (2) the evidence submitted by Ms. Hurley; (3) the attorneys' customary fees; (4) the attorneys' experience, reputation, and ability; and (5) awards in similar cases, the Court finds that the hourly rates documented by Ms. Hurley and reflected in the billing records are the prevailing market rates for this type of case in the District of South Carolina. In conclusion, therefore, the Court finds that a reasonable number of hours is 1079.75 and, when multiplied by the prevailing market rates, the Court calculates the lodestar amount to be $241,888.00. This amount

---

[16]In *Super Duper,* the primary attorney's hourly rate was from $335 to $370 and the declaration in that case also set forth hourly rates for others involved in that litigation. Here, while Ms. Hurley was the primary attorney who worked the majority of the hours claimed, the billing records submitted show occasional work by others at Turner Padget, such as Bernard Klosowski, whose hourly rate was from $300 to $320.

is a reasonable amount of attorneys' fees in this case.[17]  The Court notes that this is one-half of the amount sought.

### C. Bill of Costs

The Calli Baker's Defendants, as documented in their Amended Bill of Costs [Doc. #239], seek $18,410.14 in addition to the requested attorneys' fees.  Specifically, they seek the following costs: (1) $3,769.09 for Westlaw "Research"; (2) $350.00 for "Fees of the Clerk"; (3) $4,117.86 for "Printing Costs"; (4) $8,710.38 for "Transcript Costs"; and (5) $1,462.81 for "Mediation Costs." Doc. #239-1.  In response, the Firehouse Plaintiffs argue that, while the Lanham Act allows for awards of costs to prevailing plaintiffs, § 1117(a) does not allow for awards of costs to prevailing defendants.  The Firehouse Plaintiffs also object to several specific costs that the Calli Baker's Defendants seek to recoup.

The Fourth Circuit has held that Rule 54(d)(1) creates a presumption that the prevailing party will be awarded costs. *Cherry v. Champion Int'l Corp.,* 186 F.3d 442, 446 (4th Cir. 1999) (citing *Delta Air Lines, Inc. v. August,* 450 U.S. 346 (1981)).  The Court has "considerable discretion" in deciding whether and to what extent to tax costs. *See Constantino v. American S/T Achilles,* 580 F.2d 121, 123 (4th Cir. 1978).  However, the Court's discretion to tax costs is limited to those specifically enumerated in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441 (1987); *see also Fells v. Virginia Dep't Of Transp.,* 605 F. Supp. 2d 740, 742 (E.D. Va. 2009).  Inasmuch as the Court has found that the Calli Baker's Defendants are the only prevailing party in this case, then costs, if any, can be granted as to them. Contrary to the Firehouse Plaintiffs' assertion, there is no controlling rule in this

---

[17]In earlier filings with the Court, counsel for the Calli Baker's Defendants stated that "the median cost of litigating a trademark infringement case involving less than $1 million is approximately $300,000." Doc. #147, p.4 n.2. Additionally, in a sworn affidavit, Scurfield declared that, through November 2010, he had borrowed $200,000 from a line of credit to pay attorneys' fees and other costs associated with this litigation. Doc. #147-3, pp.2-3.

31

Circuit that prohibits a prevailing defendant from receiving costs under the Lanham Act. *See Super Duper, Inc. v. Mattel, Inc.,* 382 F. App'x 308 (4th Cir. 2010); *see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns,* No. 2:08-cv-24-BO, 2011 WL 3207805 (E.D.N.C. July 26, 2011); *cf. PETA v. Doughney,* 263 F.3d 359, 371 (4th Cir. 2001) (stating the "award of monetary damages, attorney fees and costs under the Lanham Act is committed to the sound discretion of the Court, based on the equities of each particular case") (citation omitted).

### 1. Mediation Costs

First, the Firehouse Plaintiffs object to the inclusion of mediation costs. The Calli Baker's Defendants do not appear to contest that these costs are not recoverable costs enumerated in 28 U.S.C. § 1920. Therefore, because the Calli Baker's Defendants have failed to make the requisite initial showing that these costs fall within an allowable category of taxable costs,[18] they will not be awarded. *See Brisco-Wade v. Carnahan,* 297 F.3d 781, 782 (8th Cir. 2002) (stating "section 1920 does not list mediation fees as taxable costs); *see also AM Props. v. Town of Chapel Hill,* 202 F. Supp. 2d 451, 456 (M.D.N.C. 2002) (rejecting taxation of mediator fees); *Zeuner v. Rare Hospitality Int'l, Inc.,* 386 F. Supp. 2d 635, 640 (M.D.N.C. 2005) (concluding that mediation expenses are not taxable as costs under 28 U.S.C. § 1920).

### 2. Computerized Research

Next, the Firehouse Plaintiffs object to the inclusion of costs for computerized legal research. According to the Firehouse Plaintiffs, "because computerized legal research is not one of the enumerated costs recoverable under 28 U.S.C. § 1920, the amount of $3,769.00 sought by Defendants here should be

---

[18]"The prevailing party bears the burden of showing that the requested costs are allowed by § 1920. . . . Once the prevailing party makes this showing, the burden shifts to the losing party to show the impropriety of taxing these costs." *Fells,* 605 F. Supp. 2d at 742.

disallowed." Doc. #235, p.4.  In response, the Calli Baker's Defendants argue that "[s]uch computerized

research was reasonable (less than $4,000 over the life of the case) and necessary in order to defend the

many claims asserted by Plaintiffs." Doc. #240, p.14.  Because these costs are not an allowable category

of taxable costs pursuant to § 1920, they will not be awarded.[19] *See Am. Props.,* 202 F. Supp. 2d at 456

(collecting circuit court cases holding that computerized legal research costs are not taxable under §

1920); *see also Dick's Sporting Goods, Inc. v. Dick's Clothing & Sporting Goods, Inc.,* 12 F. Supp. 2d

499, 501 (D. Md. 1998) (limiting taxable costs to those specifically enumerated in § 1920 and disallowing

costs for "Lexis/Westlaw" use); *O'Bryhim v. Reliance Standard Life Ins. Co.,* 997 F. Supp. 728, 737 (E.D.

Va. 1998) (awarding the "costs usually allowed under 28 U.S.C. § 1920" and disallowing costs for

Westlaw use).

### 3. Printing Costs

The Firehouse Plaintiffs also object to the inclusion of $4,117.86 in costs for "[f]ees and

disbursements for printing."  The Calli Baker's Defendants claim that

> printing and copying charges are also recoverable, as necessary documents
> for use in the case, pursuant to 28 U.S.C. § 1920(4). As shown by Exhibit
> A to Defendants' Bill of Costs, such charges included the costs of
> obtaining copies of Plaintiffs' records during discovery. . . . It was
> necessary for Calli Baker's counsel to obtain those documents in order to
> defend the case.

Doc. #240, p.14.  Section 1920(4) provides that "[f]ees for exemplification and the costs of making copies

of any materials where the copies are necessarily obtained for use in the case" are taxable costs. 28 U.S.C.

§ 1920(4); *see Simmons v. O'Malley,* 235 F. Supp. 2d 442, 444 (D. Md. 2002) (A showing that the papers

---

[19]The Court notes that the costs of computerized legal research are properly reflected as
part of the reasonable attorneys' fees awarded to the Calli Bakers' Defendants. *See
O'Bryhim,* 997 F. Supp. at 737; *see also Am. Props.,* 202 F. Supp. 2d at 455 (concluding that
the cost of Westlaw legal research "is more properly characterized as a component of
attorneys' fees, not as a taxable cost of litigation").

were "necessarily obtained for use in the case" includes, "at a minimum, documents used at trial and copies furnished to the court and opposing counsel."). Local Rule 54.03(F)(1) enumerates the five types of taxable costs permitted under this Section, the most relevant being "[c]osts of one copy of a document . . . introduced into evidence in lieu of original." Local Rule 54.03(F)(1)(a) (D.S.C.). However, "[c]opies of exhibits obtained for counsel's own use" are not taxable. Local Rule 54.03(F)(2)(d); *see Simmons,* 235 F. Supp. 2d. at 444. As the burden is on the party seeking recovery of photocopying costs to demonstrate the reasons for each copying charge,[20] and since the Calli Baker's Defendants have not identified the number of copies; the charges for making those copies; or the purposes or uses of those copies, "there does not appear to be a sufficient showing for the [C]ourt to exercise its discretion to determine that these costs are properly reimbursable rather than incurred simply as a 'convenience' to counsel." *Simmons,* 235 F. Supp. 2d at 444; *Mann v. Heckler & Koch Def., Inc.,* 2011 WL 1599580, at *7 (E.D. Va. 2011).

### 4. Transcript Costs and Fees of the Clerk

Finally, the Calli Baker's Defendants seek $8,710.38 in "Transcript Costs" and $350.00 in "Fees of the Clerk." The Firehouse Plaintiffs do not appear to make specific objections to these costs, and the Court finds that these costs are taxable costs and, thus, shall be awarded. *See* 28 U.S.C. § 1920(1) & (2); Local Rule 54.03(A) & (H); *see also LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n,* 830 F.2d 522, 528 (4th Cir. 1987); *O'Bryhim,* 997 F. Supp. at 737-38.

For the reasons stated above, the Court grants, as modified, the Calli Baker's Defendants' Amended Bill of Costs. Specifically, the Calli Baker's Defendants shall recoup $350.00 for "Fees of the Clerk" and $8,710.38 for "Transcript Costs" as taxable costs.

---

[20]*Ford v. Zalco Realty, Inc.,* 708 F. Supp. 2d 558, 563 (E.D. Va. 2010).

### Conclusion

Based on the foregoing, it is **ORDERED** that:

(1) Firehouse Plaintiffs' [226] Motion for Judgment as a Matter of Law as to Defendants' Claim of Fraud . . . or in the Alternative a New Trial as to All Issues is **DENIED**;

(2) Calli Baker's Defendants' [227] Motion for Attorneys' Fees is **GRANTED,** as modified, and the Firehouse Plaintiffs shall pay the Calli Baker's Defendants attorneys' fees in the sum of $241,888.00;

(3) Calli Baker's Defendants' [239] Amended Bill of Costs is **GRANTED**, as modified, and the Firehouse Plaintiffs shall pay the Calli Baker's Defendants $350.00 for "Fees of the Clerk" and $8,710.38 for "Transcript Costs"; and

(4) the Clerk of Court is hereby **DIRECTED** to enter judgment for the Calli Baker's Defendants in the following amounts: Calli Baker's Defendants, as the prevailing party, are entitled to an award of costs in the total amount of $9,060.38 and is entitled to an award of attorneys' fees in the amount of $241,888.00.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

October 17, 2011
Florence, South Carolina

35